Dolores **BRYAN,** Appellant,

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs,** Appellee.

No. 97–2216.

United States Court of Appeals for Veterans Claims.

May 9, 2000.

Scott S. Liberman of Ft. Lauderdale, Florida, was on the brief for the appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Richard Mayerick, all of Washington, D.C., were on the brief for the appellee.

Before KRAMER, STEINBERG, and GREENE, Judges.

GREENE, Judge:

Mrs. Dolores Bryan appeals, through counsel, a September 11, 1997, Board of Veterans' Appeals (Board) decision that determined that the amount of her settlement under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, 2671–80, should

be offset against her dependency and indemnity compensation (DIC) benefits under 38 U.S.C. § 1318(d). The Court has jurisdiction over the case under 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will vacate the Board's decision and remand the matter.

## I. FACTS

The facts are not in dispute. The veteran, Ralph B. Bryan, died in May 1987 at the Bay Pines, Florida, VA Medical Center (VAMC). Record (R.) at 32. At the time of his death, Mr. Bryan had been continuously rated as totally disabled for over ten years. R. at 32. In August 1987, a VA regional office (RO) determined that the veteran's ten-year total disability rating entitled Mrs. Dolores Bryan, his surviving spouse, to DIC benefits, effective June 1, 1987, pursuant to 38 U.S.C. § 1318(b)(1). R. at 48.

In 1988, Mrs. Bryan and her son Ralph J. Bryan, who was the personal representative of Mr. Bryan's estate, filed a $2,000,000 FTCA claim against the United States alleging Mr. Bryan's wrongful death because of his lack of treatment at the VAMC. R. at 59–62. In October 1990, they agreed with the United States to the following settlement:

IT IS HEREBY STIPULATED by and between the *plaintiffs,* Ralph J. Bryan as Personal Representative and Delores [sic] Bryan, and the defendant, United States of America, by and through their respective undersigned attorneys, as follows;

1. That the parties do hereby agree to settle and compromise the above entitled action upon the terms indicated below.

2. That the defendant, United States of America, will pay to the *plaintiffs* the total sum of THREE HUNDRED TWENTY–FIVE THOUSAND DOLLARS NO/100 ($325,000.00).

3. That the *plaintiffs* hereby agree to accept said sum in full settlement and satisfaction of any and all claims and demands which they or their representatives, heirs, executors administrators, or assigns may have against the defendant, United States of America, and its agents and employees, on account of the incident or circumstances giving rise to this suit.

4. That is [sic] consideration for the payment of the aforesaid $325,000.00, the *plaintiffs, Ralph J. Bryan as personal representative and Delores* [sic] *Bryan* agree that they will indemnify and save harmless the United States of America from any and all other claims, actions, or proceedings which may hereafter be asserted or brought by or on behalf of them to recover for damages arising out of the incident occurring during the period from May 2nd through May 9th, 1987, including all claims related to the matter alleged in the Complaint.

5. That this agreement shall not constitute an admission of liability or fault on the part of the defendant, United States of America, or its agencies.

6. That it is agreed that an attorney's fee equivalent to 25% of the proceeds of the settlement, shall be paid to Richard J. Roselli, Attorney for Plaintiff, which sum will be paid out of the proceeds of the settlement amount payable to the plaintiff and not in addition thereto.

7. That this suit shall be dismissed with prejudice and without costs, this court retaining jurisdiction to enforce the terms of the Stipulation.

R. at 63–64 (emphasis added).

In March 1993, a VARO was informed of the October 1990 FTCA settlement. R. at 54. In April 1993, the RO notified Mrs. Bryan that it had received evidence of her settlement and that 38 U.S.C. § 1318(d) required that her DIC would have to be offset by the amount of the settlement. R. at 73. Additionally, she was informed that she had 60 days to submit evidence showing that VA should not effect the proposed

offset; that she had a right to representation; and that she could request a hearing. *Id.* Later in April, she responded to the RO, requesting a review of the matter for two reasons: (1) that her DIC was not related to the FTCA claim, and (2) that under 38 U.S.C. § 351 (now § 1151), recovery on an FTCA claim by the surviving spouse as the personal representative of the veteran's estate and receipt of DIC by that spouse "cannot be considered a double recovery." R. at 75 (quoting VA Gen. Coun. Prec. 79–90 (July 18, 1990) [hereinafter G.C. Prec. 79–90]). In June 1993, the RO notified Mrs. Bryan that the information she provided was immaterial to the statutory requirement to offset the settlement amount and that the offset would be effective as of July 1, 1993. R. at 77–78. She filed a Notice of Disagreement (R. at 90, 92), the RO issued a Statement of the Case (R. at 102–08), and she appealed to the Board (R. at 131–149). A January 16, 1997, Board decision remanded the matter to the RO to clarify whether personal hearings had been requested, scheduled, or conducted and to associate any transcripts with the claims folder. R. at 183–87. After these procedural steps were taken, the matter was returned to the Board.

Relying on VA General Counsel Precedent Opinion 3–97 (Jan. 16, 1997) [hereinafter G.C. Prec. 3–97], the Board determined that section 1318(d) required offsetting Mrs. Bryan's DIC with the amount of the FTCA settlement because that amount represented damages recoverable under a wrongful death statute. R. at 6. Further, the Board decided that VA regulation 38 C.F.R. § 20.101(a) did not give it the authority to decide otherwise based on Mrs. Bryan's argument that VA had denied her constitutional due process rights by not informing her of the offset provisions at the time of the settlement negotiations with the United States. R. at 16. This appeal followed. In her appeal to the Court, Mrs. Bryan argues the following: (1) that the two-year delay in applying

the offset provision violated her right to due process of law; (2) that it is not rational for DIC, which is awarded for economic losses suffered by the appellant, to be offset by the FTCA settlement, which she asserts was primarily for emotional distress and loss of companionship; and (3) that if the offset is required, the offset should not be to the entire amount of the settlement but rather to the actual amount that she received (i.e., the settlement amount reduced by the 25% attorney fees and costs for the FTCA suit).

## II. ANALYSIS

Generally, VA will pay DIC to the surviving spouse and children of a veteran who was totally disabled for a period of ten or more years immediately preceding his death. *See* 38 U.S.C. § 1318(a), (b)(1). However, section 1318(d) provides in pertinent part:

> If a surviving spouse or a child receives any money or property of value pursuant to an award in a judicial proceeding based upon, or a settlement or compromise of, any cause of action for damages for the death of a veteran described in subsection (a) of this section, benefits under this chapter payable to such surviving spouse or child by virtue of this section shall not be paid for any month following a month in which any such money or property is received until such time as the total amount of such benefits that would otherwise have been payable equals *the total of the amount of the money received* and the fair market value of the property received.

38 U.S.C. § 1318(d) (emphasis added). Additionally, 38 U.S.C. § 1151(b) provides:

> Where an individual ... enters into a settlement or compromise under section 2672 or 2677 of title 28 by reason of a disability or death treated pursuant to this section as if it were service-connected, then no benefits shall be paid to such individual for any month beginning after the date such ... settlement, or compro-

mise on account of such disability or death becomes final until the aggregate amount of benefits which would be paid but for this subsection *equals the total amount included in such ... settlement, or compromise.*

38 U.S.C. § 1151(b) (emphasis added). VA regulations implementing section 1151(b) provide:

Where any person is awarded a judgment on or after December 1, 1962, against the United States in a civil action brought pursuant to 28 U.S.C. § 1346(b), or enters into a settlement or compromise on or after December 1, 1962, under 28 U.S.C. § 2672 or 2577, by reason of a disability, aggravation or death within the purview of this section, no compensation or dependency and indemnity compensation shall be paid to such person for any month beginning after the date such judgment, settlement, or compromise on account of such disability, aggravation, or death becomes final until the total amount of benefits which would be paid except for this provision equals *the total amount included in such* judgment, *settlement,* or compromise. The provisions of this paragraph do not apply, however, to any portion of such compensation or dependency and indemnity compensation payable for any period preceding the end of the month in which such judgment, settlement, or compromise becomes final.

38 C.F.R. § 3.800(a)(2) (1999) (emphasis added).

### A. Violation of Due Process of Law

 Mrs. Bryan first argues that VA's failure to notify her of the section 1318(d) offset provisions during the time of the October 1990 settlement negotiations violated her due process rights under the Fifth Amendment to the U.S. Constitution. The due process clause of the Fifth Amendment "requires that when an individual is to be deprived of a property interest as a result of federal government action, the aggrieved party must be pro-

vided with notice and an opportunity to be heard." *Thurber v. Brown,* 5 Vet.App. 119, 122–23 (1993) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and *Fugere v. Derwinski,* 1 Vet.App. 103 (1990)). In this regard, Mrs. Bryan does not contend that VA denied her any of the procedural rights to which she was entitled pursuant to VA regulations. Indeed, the record on appeal establishes that she was afforded notice of her right to respond to VA's proposed action to offset her DIC payments under section 1318. Rather, she asserts that due process required that she have been afforded notice of the section 1318(b) offset provision prior to her agreeing to the FTCA settlement. This argument is not persuasive. This Court has jurisdiction to review final decisions by the Board, which may encompass a review of whether the appellant was afforded all procedural rights during the adjudication of her entitlement to VA benefits. The FTCA claim and decisions pertaining thereto are not part of this Court's jurisdiction; it is the U.S. District Courts that would have jurisdiction over questions arising from that litigation. Thus, this Court has no jurisdiction to address this due process argument. Even assuming we did, it is noted that this Court has concluded:

The Supreme Court of the United States has held that everyone dealing with the Government is charged with knowledge of federal statutes and lawfully promulgated agency regulations. [*Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 ... (1947).] Thus, regulations are binding on all who seek to come within their sphere, "regardless of actual knowledge of what is in the [r]egulations or of the hardship resulting from innocent ignorance." *Id.* at 385, 68 S.Ct. 1.

*Morris v. Derwinski,* 1 Vet.App. 260, 265 (1991). All provisions of section 1318 were in effect at all times relevant to this matter. This Court is not aware of, and Mrs. Bryan through her counsel has not sug-

gested, any statutory or regulatory provision identifying a duty for VA to notify Mrs. Bryan at the time she was involved in the settlement of her FTCA suit of the existence of the DIC offset provision. Without VA's having such a duty, it would appear that there cannot have been any due process violation. Because she is presumed to know the federal statutes and regulations, the Court does not see how Mrs. Bryan's ignorance—and apparently that of her counsel—of the section 1318(d) offset provision during the settlement negotiations could constitute a legal basis for finding that her due process rights were violated.

### B. The Section 1318(d) Offset

■ Next, Mrs. Bryan argues that DIC payments are intended to compensate her only for economic losses caused by her husband's death. Appellant's Brief at 10–12. She contends that the majority of her FTCA settlement was related to non-economic damages (although the settlement does not so state), and that offsetting the amounts received for noneconomic damages would not be rational. *Id.* We reject this view. Section 1318(d) plainly mandates that money or property *received* by an individual as a result of a settlement for *"any cause of action for damages for the death of a veteran"* shall be offset against the benefits that would otherwise have been payable to that individual until such benefits would equal the total value of the money or property received in the settlement. 38 U.S.C. § 1318(d) (emphasis added). This statutory provision does not distinguish between economic and noneconomic damages.

The "plain meaning" reading of section 1318 addresses any cause of action for the veteran's death, which would include the Bryans' 1988 wrongful death claim under the FTCA. *See Gardner v. Brown,* 5 F.3d 1456 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) ("The starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'"); NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.01 (6th ed.2000) (plain meaning rule). Indeed, had Congress intended to distinguish between different components of an award, it could easily have provided for such a limitation. Thus, once the amount of money or the fair market value of property received in the settlement is determined, Mrs. Bryan's DIC benefits will be offset by that amount, suspending her DIC benefits until "the total amount of such benefits that would otherwise have been payable equals the total of the amount of the money received and the fair market value of the property received." 38 U.S.C. § 1318(d).

### C. Money or Property "Received"

Mrs. Bryan's final argument derives from the language of section of 1318(d) that requires offset of "the total amount of the money *received* and the fair market value of the property *received.*" Appellant's Brief at 9–10 (citing 38 U.S.C. § 1318(d) (emphasis added)). She contends that because the settlement specifically indicated that 25% of the proceeds of the settlement would be paid to her attorney, she did not *receive* the total amount of settlement and that only the amount that she received should be offset. *Id.*

A related question that arose under 38 U.S.C. § 1151 was considered in VA General Counsel Precedent Opinion 7–94 (Mar. 1, 1994) [hereinafter G.C. Prec. 7–94]. That opinion considered whether attorney fees paid out of FTCA settlement proceeds should be offset against benefits payable under 38 U.S.C. § 1151. In the case that presented this question, the settlement agreement stated:

[A]n attorney's fee not to exceed Forty-one Thousand Two Hundred Fifty dollars ($41,250.00) will be paid to ... the plaintiffs' attorney of record, pursuant to 28 U.S.C. § 2678. The amount for an attorney's fee as agreed upon between plaintiffs' [sic] and their lawyer shall be paid out of the proceeds of the

settlement amount payable to the plaintiffs and not in addition thereto.

G.C. Prec. 7–94 at ¶ 6. In that case, the General Counsel opined that because the attorney had no statutory entitlement to payment of fees by the government, the amount paid to the attorney was properly considered as a contractual obligation between the veteran and the attorney. In addition, G.C. Prec. 7–94 noted that in using the settlement proceeds to pay attorney fees, the veteran had enjoyed the benefit of those proceeds. Consequently, because the amount was used to pay a debt owed by the veteran to the attorney for services rendered, the General Counsel ruled that the entire amount of the settlement must be offset, including the amount of any attorney fees paid out of such proceeds.

The later General Counsel opinion construing section 1151(b), G.C. Prec. 3–97, relied on by the Board in this case, had reviewed G.C. Prec. 79–90, which had determined that the legal status under which a claimant recovers on a claim under the FTCA for a wrongful death action is relevant to determining the amount to be offset from DIC benefits pursuant to section 1151. That is, amounts recovered by a DIC recipient may be offset, but damages recovered by a personal representative under a survival statute is not subject to recovery by offset under section 1151. G.C. Prec. 3–97 continued, however, to interpret the phrase "pursuant to" to require offset "against amounts received by the actual beneficiaries pursuant to a wrongful death action regardless of whether the beneficiaries were named as parties. . . ."

The Board relied upon G.C. Prec. 3–97 for the proposition that section 1318(d) requires offset for *all damages paid.* R. at 14. In his brief, the Secretary asserts that G.C. Prec. 3–97 (addressing section 1151 claims) is not controlling in claims involving section 1318, but that its reasoning leads to the same conclusion that the Board reached here. Secretary's Brief at 9. The section 1151(b) provision for offset requires that the total amount of the award be offset. 38 U.S.C. § 1151(b) ("the aggregate amount of benefits" will be offset); G.C. Prec. 7–94 (section 1151 "clearly and unambiguously requires offset of the 'total amount' of any FTCA settlement recovered by an individual based upon the same disability for which VA benefits are payable"). In *Neal v. Derwinski,* this Court held that, even under section 1151(b), in a case where there was a judgment awarded to the estate and to the beneficiaries, moneys that were recovered by the estate were not subject to offset. *Neal,* 2 Vet.App. 296, 299 (1992). The Court concluded that North Carolina law governed the determination of the appellant's legal status. *Id.* at 298. Unlike section 1151(b), section 1318(d) requires the amount *received* in the settlement to be offset. In its decision, the Board summarily rejected Mrs. Bryan's argument that she had not received any money for attorney fees because the money was distributed directly to her attorney. R. at 14–15. Because of the difference in statutory language between sections 1151(b) and 1318(d), the reasoning in G.C. Prec. 3–97, G.C. Prec. 7–94, and *Neal* would not be relevant to an offset under section 1318(d). Consequently, under the applicable law, a section 1318(d) offset decision by the Board must address directly the actual amounts of money or property of value "received" in the settlement by a DIC recipient.

When rendering its decision, the Board is required to provide an adequate written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for its decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown,* 7 Vet.App. 517, 527 (1995); *Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). To comply with this requirement, the

Board must set forth the precise basis for its decision, analyze the credibility and probative value of all material evidence submitted on behalf of the claimant in support of the claim, and provide a statement of its reasons for its rejection of any such evidence. *See Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994).

Here, the Board's statement of the reasons or bases for its findings and conclusions are inadequate as to its determination of the total amount of money received by Mrs. Bryan from the settlement. The Board did not address: (1) How much money was received by a plaintiff other than Mrs. Bryan; (2) Whether the money received by such a plaintiff was received ultimately by Mrs. Bryan through estate distribution; (3) If so, whether such distribution was considered received by Mrs. Bryan; and (4) Whether the money received by her attorney was, in contemplation of law, "received" by Mrs. Bryan. Only when these questions are addressed and answered can the Court conduct an adequate review. Therefore, the Board's decision will be vacated and the matter remanded to the Board to make these factual determinations and conduct a full readjudication. *See Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991) (Court is not to conduct de novo fact finding but rather to remand to Board for it to find facts in the first instance subject to possible later review by Court).

### III. CONCLUSION

On consideration of the foregoing, the Court holds that the Board committed legal error that warrants remand. Accordingly, the Board's September 11, 1997, decision is VACATED and the matter REMANDED to the Board for further proceedings consistent with this opinion and issuance of a decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(a), (d)(1); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). The Board shall proceed expeditiously in accordance with section 302

of the Veterans' Benefits Improvement Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by Board or Court). *See Drosky v. Brown,* 10 Vet.App. 251, 257 (1997); *Allday,* 7 Vet.App. 517, 533–34. On remand, the appellant may submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West,* 12 Vet.App. 369 (1999) (per curiam order). The Court notes that a remand by this Court or by the Board confers on an appellant the right to VA compliance with the remand order and imposes on the Secretary a concomitant duty to ensure compliance with the terms of such an order. *See Stegall v. West,* 11 Vet.App. 268, 271 (1998).