# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-2234

SARAH J. GANTT, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided     April 30, 2002  )

*Andrew W. Green*, of West Chester, Pennsylvania, was on the briefs for the appellant.

*John H. Thompson,* Acting General Counsel; *Ron Garvin*, Assistant General Counsel; *Michael A. Leonard,* Deputy Assistant General Counsel; and *Adam K. Llewellyn*, all of Washington, D.C., were on the brief for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and GREENE, *Judges*.

GREENE, *Judge*: Sarah J. Gantt appeals, through counsel, a September 30, 1999, Board of Veterans' Appeals (Board) decision that determined that under 38 U.S.C. § 1151 (1995), the amount of her judgment under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, 2671-80, should be offset against her Department of Veterans Affairs (VA) dependency and indemnity compensation (DIC). The Court has jurisdiction over the case under 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will vacate in part the Board's decision and remand two matters.

## I. BACKGROUND

Veteran Charles R. Gantt died at the Montgomery, Alabama, VA Medical Center on May 22, 1988, of an acute myocardial infarction caused by his coronary artery disease. Record (R.) at 15. The appellant, Mrs. Sarah J. Gantt, is his widow. She filed a claim for DIC, claiming that the cause of her husband's death was related to his service; that claim was denied. R. at 10-13, 18-19.

However, she was awarded non-service-connected death pension benefits effective the first day of the month following the month of her husband's death. R. at 21-24. She appealed the denial of DIC. On November 7, 1989, the Board remanded to a VA regional office (RO) her DIC claim for further development and readjudication. R. at 54-56. It appears that the RO denied the claim and returned it to the Board. For reasons not stated in the record on appeal, Mrs. Gantt's death pension benefits were discontinued in March 1991. *See* R. at 85.

While Mrs. Gantt's appeal to the Board was pending, she also was pursuing, apparently as administratrix of the estate of her deceased husband, an FTCA civil action alleging that VA's medical treatment caused her husband's death. In October 1991, a United States District Court (District Court) entered a judgment in her favor for $86,362. R. at 79-82. In the Memorandum Opinion accompanying the judgment, the District Court noted, "Plaintiff . . . concedes that any award that she receives should be reduced by the amount the Government has paid her in widow's benefits." R. at 80-81. In determining the loss of income due to her husband's death, the District Court concluded, "The court finds that plaintiff is entitled to an award of damages in the amount of $86,362, consisting of $53,344 for loss of income and $45,000 for loss of services, reduced by $11,982 for widow's benefits received." R. at 82.

In August 1992, Mrs. Gantt's DIC claim was included in a VA-wide stay of active claims pending the outcome of *Brown v. Gardner*, 513 U.S. 115 (1994). R. at 70-71. In April 1995, after *Gardner* had been decided, VA awarded Mrs. Gantt DIC under 38 U.S.C. § 1151. R. at 73-74. The award was effective June 1, 1988, the first day of the month following the month of her husband's death. *Id.* In May 1995, Mrs. Gantt was paid $12,197 of retroactive DIC. *See* R. at 85.

A July 1995 VA audit of Mrs. Gantt's benefits payment account found that she had received a total of $11,982 in death pension benefits. The audit also confirmed that the District Court's judgment of $86,362 would be offset against Mrs. Gantt's DIC beginning in November 1991. R. at 86. The audit further showed that the $12,197 of retroactive DIC Mrs. Gantt received in May 1995 represented the difference between the death pension benefits she had received ($11,982) and the amount of DIC due to her from June 1988 through October 1991 ($24,179). R. at 85.

In September 1995, the attorney who represented Mrs. Gantt in the FTCA civil action notified the Birmingham, Alabama, RO that, in rendering its judgment, the District Court had already

2

reduced her court judgment by the amount that she had received in VA death pension benefits and that it appeared that VA was attempting a double recovery of that amount. R. at 89. The RO responded that it would offset only the $86,362 that Mrs. Gantt was awarded, not $98,344. R. at 96. In March 1997, Mrs. Gantt filed with VA a statement asserting that her check for retroactive DIC should have been $24,179 rather than $12,197 because, in light of the District Court's reduction of her award by $11,982, she had never received that money. R. at 103. After an April 1997 VA benefits payment account audit, the RO determined that Mrs. Gantt had received VA benefits totaling $24,179 for the period from June 1988 through October 1991. R. at 108.

An April 1997 VA report of contact notes that Mrs. Gantt had complained to VA that, because the District Court had reduced her judgment by the amount she had received for death pension benefits, VA should not be able to recover it from her as well. She requested a letter explaining "in plain English" why she was not entitled to an additional $11,982. R. at 115. That same month she filed a Notice of Disagreement to the RO's audit of her benefits payment account. *See* R. at 120, 122. The RO responded in an October 1997 letter, reiterating its earlier conclusion that Mrs. Gantt had been correctly paid all retroactive DIC and that $86,362 was to be offset from additional DIC payments. R. at 118. In May 1998, the RO issued a Statement of the Case, and Mrs. Gantt appealed the matter to the Board. R. at 120-24, 126. In that appeal she also argued, for the first time, that $29,107 for attorney fees incurred by her in the FTCA civil action should be excluded from the amount offset by VA. R. at 127.

In the decision here on appeal, the Board determined that Mrs. Gantt had received $11,982 in death pension benefits during the time she was eligible for retroactive DIC. Thus, it concluded that under 38 U.S.C. § 1317(a) she was not eligible to receive both. The Board determined that she was entitled only to the additional $12,197, representing the difference between the greater benefit (DIC) and the lesser benefit (pension) for that period. R. at 5. The Board also determined that, pursuant 38 U.S.C. § 1151 (1995), the $86,362 awarded by the District Court must be offset from Mrs. Gantt's DIC.

Mrs. Gantt argues for reversal of the Board decision. She urges the Court to order VA to pay her $11,982 based upon a "wrongful second recoupment" of her benefits. Appellant's Brief (Br.) at 23. She suggests that the total amount of lost income and lost wages found by the District Court was

$98,344, but that that amount was reduced by $11,982, the amount received from VA in death pension benefits, resulting in the FTCA judgment award of $86,362. She argues that in light of the reduction made by the District Court, it was improper for VA to have offset $11,982 from the amount of her past-due DIC. *Id.* at 4-7, 10-13. Finally, she contests the Board's determination that under 38 U.S.C. § 1151 the attorney fees she incurred in her FTCA civil action, which she apparently paid out of her judgment, are included in the amount of the VA offset. *Id.* at 19-21. She states that this determination produces an "absurd result" and permits VA to profit from its own wrong. *Id.*

The Secretary contends that Mrs. Gantt has received the maximum amount of DIC authorized by law and that because the law prohibits payment of both DIC and death pension benefits, she was correctly paid the $12,197 difference between the $24,179 retroactive DIC awarded and the $11,982 death pension benefits she had already received. Secretary's Br. at 3-7. He further argues that the Board did not err in holding that the law requires VA to withhold Mrs. Gantt's DIC until the entire court judgment of $86,362 is offset.

## II. ANALYSIS

### A. Death Pension Benefits and DIC

The surviving spouse of a veteran is entitled to receive death pension benefits where the veteran satisfied certain service requirements or, at the time of death, was receiving or entitled to receive compensation or retirement pay for a service-connected disability. *See* 38 U.S.C. § 1541(a); *Martin v. Brown*, 7 Vet.App. 196, 199 (1994); 38 C.F.R. § 3.3(b)(4) (2001). If a veteran dies due to a service-connected disability, the surviving spouse, in his or her own right, may receive DIC. *See* 38 U.S.C. §§ 1310(a), 1311; *Burris v. Principi*, 15 Vet.App. 348, 352 (2001); 38 C.F.R. § 3.5(a) (2001). A surviving spouse is also eligible for DIC where a veteran suffers an injury as the result of VA treatment and that injury results in the veteran's death, as long as the death was not the result of willful misconduct by the veteran. 38 U.S.C. § 1151; *see also* 38 C.F.R. § 3.358 (2001). No person eligible for DIC shall be eligible for payment of death pension benefits. *See* 38 U.S.C. § 1317(a); 38 C.F.R. § 3.5(c).

At the time of Mrs. Gantt's May 1988 DIC claim and her June 1995 disagreement with the VA offset, section 1151 provided:

4

> Where an individual is . . . awarded a judgment against the United States in a civil action brought pursuant to section 1346(b) of title 28 [FTCA] . . . by reason of a disability, aggravation, or death treated pursuant to this section as if it were service-connected, then *no benefits shall be paid* to such individual for any month beginning after the date such judgment . . . on account of such disability, aggravation, or death becomes final *until* the aggregate amount of benefits which would be paid but for this sentence *equals the total amount included in such judgment . . . .*

38 U.S.C. § 1151 (1995) (emphasis added). That provision was subsequently amended; however, those amendments were made applicable only to claims filed on or after October 1, 1997. *See* Pub. L. No. 104-204, § 422(b)(1), (c), 110 Stat. 2926-27 (1996) (found at 38 U.S.C. § 1151 note); *Boggs v. West*, 11 Vet.App. 334, 343-44 (1998). VA regulations implementing section 1151 provided:

> Where any person is awarded a judgment on or after December 1, 1962, against the United States in a civil action brought pursuant to 28 U.S.C. 1346(b), or enters into a settlement or compromise on or after December 1, 1962, under 28 U.S.C. 2672 or 2677, by reason of a disability, aggravation, or death within the purview of this section, no compensation or dependency and indemnity compensation shall be paid to such person for any month beginning after the date such judgment, settlement, or compromise on account of such disability, aggravation, or death becomes final until the total amount of benefits which would be paid except for this provision equals *the total amount included in such judgment*, settlement, or compromise. The provisions of this paragraph do not apply, however, to any portion of such compensation or dependency and indemnity compensation payable for any period preceding the end of the month in which such judgment, settlement, or compromise becomes final.

38 C.F.R. § 3.800(a)(2) (1995) (emphasis added). In other words, once an individual entitled to DIC receives a final judgment in a civil action, monthly DIC will not be paid until the total amount of DIC payments that would have been paid equals the amount of the civil judgment.

Mrs. Gantt argues that VA wrongfully recouped $11,982 from her DIC entitlement. In response, the Secretary asserts:

> Appellant essentially contends that the District Court withheld $11,982 from her *judgment* and that she should not have this amount withheld a second time from her DIC benefits. Appellant fails to understand two critical facts. First, the District Court did not withhold $11,982 from her *judgment*. It *reduced her damages* by $11,982, reflecting the amount of lost wages mitigated, in determining the amount of judgment. Second, the additional payment after the award of DIC in the amount of $12,197 was to make up the *difference* between total death pension benefits and total DIC benefits. Appellant was only entitled to the latter which was a greater benefit in the total amount of $24,179. Appellant was paid $12,197 in addition to the

> $11,982 previously received for the maximum allowable amount of $24,179. Appellant's DIC benefits were not reduced a *second time* by $11,982 as she argues in her brief. They were not even reduced a *first time* by the Court, as she argues in her brief, because she actually received them.

Secretary's Br. at 5-6.

From June 1988 to October 1991, Mrs. Gantt was paid $11,982 in VA death pension benefits. In her FTCA civil action, the District Court, in determining the loss of income due to Mr. Gantt's death, found that Mrs. Gantt's damages should be reduced by the amount of death pension benefits that *she had already received* ($11,982), and awarded her $86,362. R. at 79-82. Several years later, in 1995, VA determined that Mrs. Gantt was entitled to DIC under 38 U.S.C. § 1151. *See* R. at 73-74, 76, 78. Retroactive DIC was awarded and VA determined that, as of October 1991, Mrs. Gantt was entitled to a total of $24,179, representing DIC owed from June 1988 to October 1991. R. at 85-86; *see also* R. at 73-74. Monthly DIC payments owed from November 1991 forward were withheld as VA began to offset the "total amount included in [the FTCA] judgment," $86,362, against the DIC payments owed. 38 U.S.C. § 1151 (1995).

In calculating the amount of her retroactive award, VA determined that, because a claimant may receive only DIC *or* death pension benefits, but not *both*, and because it *had already paid to her $11,982* in death pension benefits, Mrs. Gantt was entitled to $12,197, representing the difference between the full retroactive amount of DIC ($24,179) and the amount of benefits already paid to her ($11,982). R. at 86; *see also* 38 U.S.C. § 1317(a). Nothing in the record on appeal indicates that Mrs. Gantt ever had returned any of the $11,982 to VA or that she elected to receive the death pension benefits instead of DIC. *See* 38 U.S.C. § 1317; 38 C.F.R. § 3.5(c). Therefore, Mrs. Gantt's argument of a "wrongful second recoupment" fails. VA has not reduced the amount of her retroactive DIC entitlement, but rather has subtracted from it the sum of money that she already received as death pension benefits.

Nor does the District Court's judgment of $86,362, which included consideration of the $11,982 she had received, constitute a "wrongful second recoupment" of that $11,982. In its written opinion the District Court recognized that the government had paid death pension benefits in the amount of $11,982, in essence *already* compensating Mrs. Gantt, in part, for lost income suffered as a result of her husband's death. Mrs. Gantt agreed that this amount should be subtracted from

what the District Court would determine as her lost income. R. at 65-67. The District Court awarded $86,362, which VA is now offsetting against her DIC payments. The Board concluded that $86,362, the "total amount of the District Court's judgment," must be offset by any post-judgment DIC payments and that, if Mrs. Gantt was dissatisfied with the District Court's calculation, "her remedy for the reduced judgment is not with . . . VA." R. at 6. Despite Mrs. Gantt's discontentment with this finding (*see* Appellant's Br. at 12-13), the Board's conclusion is not erroneous. *See Bryan v. West*, 13 Vet.App. 482, 486 (2000) ("The FTCA claim and decisions pertaining thereto are not part of this Court's jurisdiction; it is the U.S. District Courts that would have jurisdiction over questions arising from that litigation."). Accordingly, the Court holds, subject to the considerations addressed in parts II.B and II.C, that the Board did not err in determining that Mrs. Gantt is not entitled to an additional payment of DIC for the period before the District Court's judgment.

## B. Party as Administratrix of the Estate versus Party as Individual

Notwithstanding the Court's holding as to offset and section 1151, there is another issue that was neither addressed by the Board nor raised by the parties, but that applies to Mrs. Gantt's claim. That question concerns a determination of Mrs. Gantt's legal status in the FTCA civil action, and the effect of this status in determining the amount of money to be offset under section 1151. In *Neal v. Derwinski*, this Court held that under section 1151, in a case where there was a judgment that awarded money both to the estate and to the beneficiaries, the money recovered by the estate was not subject to offset. *Neal*, 2 Vet.App. 296, 299 (1992).

When rendering its decision, the Board is required to provide an adequate written statement of reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for its decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). Here, the Board's statement of the reasons or bases does not address this critical issue. Only when this issue is addressed can the Court conduct a complete review. Therefore, the Board's decision will be vacated in part and this matter remanded to the Board to make factual determinations and conduct a readjudication. *See Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (holding that Court is not

to conduct de novo fact finding but rather to remand to Board for it to find facts in the first instance subject to possible later review by Court).

C. Attorney Fees in FTCA Action

The appellant argues that the amount of attorney fees that she paid in connection with the FTCA action should not be included in the judgment amount that is being offset from her DIC payments. Section 1151 provides that "[w]here an *individual* is . . . awarded a judgment . . . then no benefits shall be paid to such individual . . . until the aggregate amount of benefits which would be paid but for this sentence equals the total amount included in such judgment . . . ." 38 U.S.C. § 1151 (1995) (emphasis added). We note that, based on the plain language of section 1151, the determination of whether attorney fees will be included in the VA offset against the appellant's DIC payments appears to depend on whether she was awarded a judgment as an individual, as opposed to as administratrix of the veteran's estate. Accordingly, the appellant's legal status affects the attorney-fee matter, *see* 38 U.S.C. § 1151, and the Court will therefore not now address this argument but will remand the matter to the Board to address this issue in light of this opinion. *See Bryan, supra*; VA Gen. Coun. Prec. 3-97 (Jan. 16, 1997), 7-94 (Mar. 1, 1994), 79-90 (July 18, 90).

### III. CONCLUSION

On consideration of the foregoing, the Court holds that the Board committed legal error that warrants remand. Accordingly, the Board's September 30, 1999, decision is VACATED IN PART and two matters are REMANDED to the Board for further proceedings consistent with this opinion and issuance of a decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(a), (d)(1); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board shall proceed expeditiously in accordance with section 302 of the Veterans' Benefits Improvement Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by Board or Court). *See Drosky v. Brown*, 10 Vet.App. 251, 257 (1997); *Allday*, 7 Vet.App. at 533-34. On remand, the appellant may submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369 (1999) (per curiam order). The Court notes that a remand by this Court or by the Board confers on an appellant the right to VA compliance with the remand

order and imposes on the Secretary a concomitant duty to ensure compliance with the terms of such order. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998).