﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/20 Archive Date: 04/30/20

DOCKET NO. 191018-38054
DATE: April 30, 2020

ORDER

Entitlement to an initial rating in excess of 10 percent for bilateral hearing loss is denied.

Entitlement to a rating in excess of 30 percent for migraine headaches is denied.

Entitlement to a total disability rating based upon individual unemployability due to service connected disability (TDIU) is granted.

REMANDED

Entitlement to a rating in excess of 10 percent for viral meningitis with sequela of seizures, fatigue, and memory loss is remanded. 

FINDINGS OF FACT

1. For the entire appeal period the preponderance of the evidence shows that the Veteran’s bilateral hearing loss is manifested by no worse than Level XI hearing in the right ear and no worse than Level I in the left ear. 

2. For the entire appeal period the preponderance of the evidence shows that the Veteran’s migraine headaches are not manifested by at least very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 

3. The Veteran’s service-connected disabilities preclude substantially gainful employment.

CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 10 percent for bilateral hearing loss have not been met at all times during the pendency of the appeal. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.85, 4.86, Diagnostic Code (DC) 6100.

2. The criteria for a rating in excess of 30 percent for migraines disorder have not been met at all times during the pendency of the appeal. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.12a, DC 8100. 

3. The criteria for a TDIU have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.1, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from July 1984 to August 1992. 

This appeal comes to the Board of Veterans’ Appeal (Board) under the Appeals Modernization Act (AMA) review system. 84 Fed. Reg. 138 (Jan. 18, 2019).

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from June 2019 and July 2019 AMA rating decisions. In the September 2019 VA form 10182, Decision Review Request: Board Appeal (AMA Notice of Disagreement), the Veteran elected the Direct Review Lane. Consequently, the Board’s review is limited to the evidence of the record at the time of the rating decisions on June 10, 2019, for the claim of bilateral hearing loss and July 24, 2019, for the claims of increased rating of viral meningitis and headaches.

In this regard, evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the above claims it may not consider this evidence in its decision. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

The Board also finds that the record raises the claim for a TDIU. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

The Increased Rating Claims

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2. All reasonable doubt will be resolved in the claimant’s favor. 38 C.F.R. § 4.3. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

Separate ratings can be assigned for separate periods based on the facts found - a practice known as “staged” ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Staged ratings are appropriate whenever the factual findings show distinct periods where the service-connected disability exhibits symptoms that would warrant different ratings. Id.

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. §§ 4.25. Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a Veteran’s service-connected disability. 38 C.F.R. §§ 4.14. It is possible for a Veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes, however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. §§ 4.10.

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In evaluating the evidence, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000). In doing so, the Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. Owens v. Brown, 7 Vet. App. 429, 433 (1995). 

Entitlement to an initial rating in excess of 10 percent for bilateral hearing loss.

The Veteran’s service-connected bilateral hearing loss is currently assigned a 10 percent rating under 38 C.F.R. § 4.85, DC 6100. 

Under DC 6100 the rating assigned for hearing loss is determined by a mechanical application of the rating schedule, which is grounded on numeric designations assigned to audiometric examination results. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992).

Specifically, evaluations of hearing impairment range from 0 to 100 percent based on organic impairment of hearing acuity. Auditory acuity is gauged by examining the results of controlled speech discrimination tests, together with the results of puretone audiometric tests in the frequencies of 1000, 2000, 3000, and 4000 cycles per second (Hz). To evaluate the degree of disability, the rating schedule establishes 11 auditory acuity levels ranging from level I, for essentially normal acuity, through level XI, for profound deafness. 38 C.F.R. § 4.85 et. seq. Tables VI and VII as set forth following 38 C.F.R. § 4.85 are used to calculate the rating to be assigned. 38 C.F.R. § 4.85. 

Under 38 C.F.R. § 4.86, when the puretone threshold at each of the four specified frequencies (1,000, 2,000, 3,000, and 4,000 Hertz) is 55 decibels or more, Table VI or Table VIa is to be used, whichever results in the higher numeral. 38 C.F.R. § 4.86(a). Additionally, when the puretone threshold is 30 decibels or less at 1,000 Hertz, and 70 decibels or more at 2,000 Hertz, Table VI or Table VIa is to be used, whichever results in the higher numeral. Thereafter, that numeral will be elevated to the next higher Roman numeral. 38 C.F.R. § 4.86(b).

38 C.F.R. § 4.85(c) also provides, in substance, that Table VIa will be used to determine a Roman numeral designation (I through XI) for hearing impairment based only on the puretone threshold average when the examiner certifies that use of the speech discrimination test is not appropriate because of language difficulties, inconsistent speech discrimination scores, etc…

When impaired hearing is service connected in only one ear, then the nonservice-connected ear will be assigned a numeric designation of I unless the service-connected hearing loss is at least 10 percent disabling and there is hearing impairment in the nonservice-connected ear under 38 C.F.R. § 3.385. 38 U.S.C. § 1160(a)(3); 38 C.F.R. §§ 3.383(a)(3), 4.85(f). If hearing in the service-connected ear is at least 10 percent disabling, then the service connected ear is rated as if both ears were service connected. 38 C.F.R. §§ 3.383(a).

At the September 2016 VA examination, pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 90+ 105+ 105+ 105+ 105+

LEFT 45 45 45 40 45

The averages were 105 decibels in the right ear and 44 decibels in the left ear. The Veteran speech recognition ability was 94 percent in his left ear. The use of speech discrimination was not appropriate for the right ear. 

At a February 2018 VA examination, pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 105+ 105+ 105+ 105+ 105+

LEFT 45 40 40 40 45

The averages were 105 decibels in the right ear and 41.25 decibels in the left ear. The Veteran speech recognition ability was 96 percent in his left ear. The use of speech discrimination was not appropriate for the right ear. As to its’ functional impact he reported that he has problems hearing conversations and cannot hear at all from the right ear 

At a February 2019 VA examination, pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 105+ 105+ 105+ 105+ 105+

LEFT 50 45 45 45 45

The averages were 105 decibels in the right ear and 45 decibels in the left ear. The Veteran speech recognition ability was 0 percent in the right ear and 94 percent in his left ear. The use of speech discrimination was not appropriate for the right ear. As to its’ functional impact he reported that he has problems hearing conversations. The February 2019 VA examiner also noted that the Veteran’s hearing loss impacts the ordinary conditions of daily life, including the ability to work because he has difficulty hearing when 2 to 3 people are talking at once or when people are talking behind him. 

A private audiological examination was obtained in February 2019, the examiner noted the pure tone audiological evaluation revealed a mild to moderately-severe sensorineural hearing loss in the left ear and a profound sensorineural hearing loss in the right ear. Word recognition was 100 percent in the left ear and word recognition could not be tested in the right ear. 

Initially, the Board finds that it cannot rate the severity of the Veteran’s service-connected bilateral hearing loss based solely on the February 2019 private audiological examination because the examiner does not provide sufficient audiological results to apply 38 C.F.R. §§ 4.85, 4.86. See Owens, supra. 

The Board also notes that treatment records document the Veteran’s periodic complaints and treatment for hearing loss. However, nothing in these treatment records show his adverse symptomatology to be worse than what was reported at the above VA examinations. See Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991) (VA may only consider independent medical evidence to support its findings and is not permitted to base decisions on its own unsubstantiated medical conclusions). 

Initially, because the above VA examiners were uniform in finding that the use of speech discrimination was not appropriate for the right ear, that ear is rated using 38 C.F.R. § 4.86, Table VIa. Under Table VIa, at its worst the Veteran’s right ear hearing loss is rated as an XI.

With application of the above audiological test results to 38 C.F.R. § 4.85, Table VI, Table VII, the Board finds that at its worst the Veteran’s right ear hearing loss is Level XI impairment and his left ear hearing loss is Level I impairment. Applying the criteria from Table VI and VIA to Table VII, a 10 percent rating is derived. Therefore, the Board finds that the claim for a rating in excess of 10 percent for bilateral hearing loss is denied under Table VII at all times during the pendency. See 38 C.F.R. § 4.85, Diagnostic Code 6100; Fenderson, supra.

As to 38 C.F.R. § 4.86(a), as noted above the puretone thresholds in the right ear were at their worse 105, 105, 105, and 105. Therefore, this regulation applies to the current claim.

With the application of 38 C.F.R. § 4.86(a), the Veteran’s right ear is again assigned a numeric designation of XI under Table VIa and his left ear is still assigned a numeric designation of I under Table VI. Therefore, the Board finds that these test results still do not show that he met the criteria for a rating in excess of 10 percent at any time during the pendency of the appeal. See 38 C.F.R. §§ 4.85, 4.86, Table VII; Hart, supra. 

As to 38 C.F.R. § 4.86(b), at the above VA examinations the Veteran did not have thresholds of 30 decibels or less at 1,000 Hz, and 70 decibels or more at 2,000 Hz. Consequently, 38 C.F.R. § 4.86(b) does not apply to the current claim at all times during the pendency of the appeal. See Hart, supra.

As to the lay claims from the Veteran’s regarding the severity of his hearing loss, the Board finds the VA examiners audiological testing more probative than any lay claims to the contrary despite hearing loss being observable by lay persons. See Davidson, supra. The Board has reached this conclusion because objective medical records are more accurate than self-reported claims which are not always clear. See Owens, supra.

Consequently, the Board finds that the Veteran did not meet the criteria for a rating in excess of 10 percent for his hearing loss at all times during the pendency of the appeal, and this claim is denied. See 38 C.F.R. §§ 4.85, 4.86; Hart, supra.

Entitlement to a rating in excess of 30 percent for migraine headaches.

The Veteran’s headaches, associated with viral meningitis, are rated as 30 percent disabling pursuant to 38 C.F.R. §§ 4.124a, DC 8100. 

Under DC 8100, a noncompensable rating is warranted for less frequent migraine attacks. A 10 percent rating is warranted for characteristic prostrating attacks averaging one in two months over the last several months. A 30 percent rating is warranted for characteristic prostrating attacks occurring on an average once a month over the last several months. Finally, a maximum 50 percent rating is warranted for migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § 4.124a.

VA regulations do not define “prostrating,” nor has the Court. See Fenderson v. West, 12 Vet. App. 119 (in which the Court quotes DC 8100 verbatim but does not specifically address the matter of what is a prostrating attack). By way of reference, the Board notes that according to Webster’s New World Dictionary of American English, Third College Edition (1986), p. 1080, “prostration” is defined as “utter physical exhaustion or helplessness.” A very similar definition is found in Dorland’s Illustrated Medical Dictionary 1554 (31st Ed. 2007), in which “prostration” is defined as “extreme exhaustion or powerlessness.”

Also, the term “productive of severe economic adaptability” has not been clearly defined by regulations. The Court has, however, explained that “productive of” for purposes of DC 8100 can either mean producing, or capable of producing. See Pierce v. Principi, 18 Vet. App. 440, 445 (2004). Thus, migraine headaches need not actually produce severe economic inadaptability to warrant a 50 percent rating under DC 8100. Id. At 445-46. Similarly, “economic inadaptability” does not equate to unemployability, as such would undermine the purpose of regulations pertaining to a TDIU. Id. at 446; see also 38 C.F.R. § 4.16. The Board notes, however, that the migraine headaches must be, at a minimum, capable of producing severe economic inadaptability in order to meet the 50 percent criteria.

In an October 2017 VA examination, the Veteran reported that he had constant head pain, on both sides of the head, which were daily upon waking up. The Veteran also reported nausea and sensitivity to light associated with his headaches. The examiner noted that the Veteran had characteristic prostrating attacks of headaches, however the prostrating attacks did not produce severe economic inadaptability nor does his condition impact his ability to work. 

The Veteran was afforded another VA examination in April 2019 for his migraine disorder. The examiner recorded that the Veteran typically has one migraine every month which lasts approximately 1 to 2 days and is on the left side of the head. Associated with the migraines, the Veteran typically has nausea, sensitivity to light and sensitivity to sound. The examiner also noted that the Veteran does not have prostrating and prolonged attacks of migraines which produce severe economic inadaptability; however, the examiner also noted that the Veteran’s headaches have prostrating attacks and he is unable to interact physically, which impacts his ability to work. 

Initially, the Board also notes that treatment records document the Veteran’s periodic complaints and treatment for migraine headaches. However, the Board finds that nothing in these treatment records show his adverse symptomatology to be worse than what was reported at the above VA examinations. See Colvin, supra. 

As to the lay claims from the Veteran’s and his family regarding the severity of his migraine headaches, the Board finds the VA examiners opinions more probative than any lay claims to the contrary despite some ot the symptomatology being observable by lay persons. See Davidson, supra. The Board has reached this conclusion because objective medical records are more accurate than lay claims which are not always clear. See Owens, supra.

After reviewing the totality of the evidence, and with consideration of the Veteran’s statements, the Board finds that the most probative evidence of record is the findings by the October 2017 and April 2019 VA examiners who both opined that the appellant’s migraine headaches did not cause very frequent, completely prostrating, and prolonged attacks productive of severe economic inadaptability at any time during the appeal. The Board has reached this conclusion because it finds that VA examiners opinion the most probative evidence of record both the opinions were provided after a review of the record on appeal and an examination of the Veteran and the opinions are supported by the findings at the examination and the record as well as not not contradicted by any other medical evidence of record. See Owens, supra; Colvin, supra.

Therefore, the Board finds that the Veteran does not meet the criteria for a rating in excess of 30 percent for migraine headaches at any time during the pendency of the appeal. 38 C.F.R. §§ 4.124a, DC 8100; Hart, supra. 

In reaching the above determination, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim for a rating in excess of 30 percent for his service-connected migraines, such is inapplicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

The TDIU Claim

The Veteran asserts that he is unable to maintain substantially gainful employment due to his service connected disabilities. Specifically, he alleges that he had to medically retire due to his bilateral hearing loss. However, upon review of the evidence, the Board finds that the Veteran’s service-connected disabilities do not render him unable to secure and follow substantially gainful employment at any point during the appeal period. 

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that if there is only one such disability, such disability shall be ratable as 60 percent or more, and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). 

Age may not be considered as a factor when evaluating unemployability or intercurrent disability, and it may not be used as a basis for a total disability rating. 38 C.F.R. § 4.19. There must be a determination that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age or a non-service-connected disability. 38 C.F.R. §§ 3.340, 3.341, 4.16.

Unlike the regular disability rating schedule, which is based on the average work-related impairment caused by a disability, “entitlement to a TDIU is based on an individual’s particular circumstances.” Rice v. Shinseki, 22 Vet. App. 447, 452 (2009). Therefore, when adjudicating a TDIU claim, VA must take into account the individual Veteran’s education, training, and work history. Hatlestad v. Derwinski, 1 Vet. App. 164 (1991) (level of education is a factor in deciding employability); Friscia v. Brown, 7 Vet. App. 294 (1994) (considering Veteran’s experience as a pilot, his training in business administration and computer programming, and his history of obtaining and losing 19 jobs in the previous 18 years); Beaty v. Brown, 6 Vet. App. 532 (1994) (considering Veteran’s 8th grade education and sole occupation as a farmer); Moore v. Derwinski, 1 Vet. App. 356 (1991) (considering Veteran’s master’s degree in education and his part-time work as a tutor).

The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. The ultimate question, however, is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

During the time period the Board is allowed to consider given the Veteran’s AMA election the record shows that his service-connected disabilities and ratings are as follows: headaches rated as 30 percent disabling; a left upper eyelid scar rated as 30 percent disabling; a second left eyelid scar rated as 10 percent disabling; tinnitus rated as 10 percent disabling; bilateral hearing loss rated as 10 percent disabling; viral meningitis rated as 10 percent disabling; and right little finger disabilities rated as noncompensable. 

Initially, the Board has not overlooked the fact that effective October 11, 2019, granted service connection for a cervical spine disability and assigned a 10 percent rating also effective October 11, 2019. However, given the Veteran’s AMA election which limited the Board’s review of the record to the evidence found in the record at the time of the July 24, 2019, rating decision, the Board is prohibited from considering the newly service connected cervical spine disability when adjudicating the TDIU claim.

Next, because the two left eyelid scars have a common etiology they are counted as one disability when calculating if the clamant meets the schedular criteria for a TDIU under 38 C.F.R. § 4.16(a). See 38 C.F.R. § 4.16(a)(2). Similarly, because the viral meningitis, headaches, tinnitus, and bilateral hearing loss also have a common etiology they are counted as one disability when calculating if the clamant meets the schedular criteria for a TDIU under 38 C.F.R. § 4.16(a). Id.

Tellingly, when counted as the one disability, the Veteran’s two left eyelid scars give him a single disability rated as 40 percent disabling and viral meningitis, headaches, tinnitus, and bilateral hearing loss give him a single disability rated as 50 percent disabling. See 38 C.F.R. § 4.26, Table I. 

Moreover, with application of 38 C.F.R. § 4.26, Table I to the above 50 percent and 40 percent ratings, the Board finds that the Veteran has sufficient additional disability to bring his combined rating to at least 70 percent. 

Therefore, the Board finds that the Veteran meets the requirements for schedular consideration for his TDIU claim. 38 C.F.R. § 4.16(a). 

Thus, the next question for the Board to consider is when, if ever, his service-connected disabilities render his incapable of substantial gainful employment. 38 C.F.R. § 4.16(a). 

In connection with his claim, the Veteran submitted VA Form 21-8940, Veterans Application for Increased Compensation Based on Unemployability, in February 2018, October 2019, February 2020, and March 2020. As noted above, given the Veteran’s AMA election, the Board may only consider the evidence of record at the time of the July 24, 2019, rating decision and therefore the TDIU adjudication can only consider the evidence found in the February 2018 VA Form 21-8940.

In the February 2018 VA Form 21-8940, the Veteran indicated that his service-connected bilateral hearing loss prevented him from securing or following any substantially gainful occupation. He reported that he worked from November 2007 to July 2016 as a correction officer in the South Carolina Department of Corrections, he last worked full-time in August 2016, and he had to medically retire due to the complete loss of hearing in his right ear and diminished hearing in his left ear. The Veteran reported that he could not work in such environment because it posed a safety risk to himself and others. The Veteran also reported that he had earlier worked from 1992 to 2016 in security for a private company. The Veteran indicated that he tried to obtain employment since his retirement. The Veteran did not report having any education or training beyond four years of high school.

Significantly, as to the Veteran’s work history performing jobs that require non-sedentary employment, including his past employment as a correction officer and in security as well as other possible sedentary employment that could make use of his 4-years of high school, the Board finds that the limitations placed on his physical activities due to his service-connected headaches and meningitis and the danger caused to the appellant, his co-workers, and others by his service-connected bilateral hearing loss, with no hearing in the right ear, and tinnitus severely limiting his ability to hear clearly what is going on working as a correction officer and in security as we other possible sedentary employment like construction and a truck driver and would adversely impact his ability to work in these fields. See Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013) (holding that the determination of whether a Veteran is unable to secure or follow a substantially gainful occupation due to service-connected disabilities is a factual rather than a medical question and that it is an adjudicative determination properly made by the Board or the regional office). The Board also finds that his service-connected tinnitus and bilateral hearing loss would make it unsafe for him to work in these fields.

Likewise, as to the Veteran working for the first time performing sedentary employment, the Board finds that the Veteran’s lack of experience when combined with the problems his headaches, meningitis, bilateral hearing loss, with no hearing in the right ear, and tinnitus would cause interacting with others including co-workers and customers and learning new tasks would all adversely impact his ability to obtain and maintain employment in these fields for the first time. See Geib, supra.

Given the above, the Board finds that his service-connected disabilities would prevent him from securing or following a “substantially gainful” occupation given his work history, his education, and the collective impact his service-connected headaches, meningitis, bilateral hearing loss, and tinnitus would have on obtaining and maintaining physically demanding including his last employment as a correction officer and in security as well as non-physically demanding employment for the first time.

Therefore, the Board finds that the most probative evidence of record shows that the Veteran’s service-connected disabilities render him incapable of substantial gainful employment and the criteria for a TDIU have been met. 38 C.F.R. § 4.16(a).

In reaching the above conclusion, the Board has not made any finding as to the effective date of the award of the TDIU because this issue is not before us.

REASONS FOR REMAND

Entitlement to a rating in excess of 10 percent for viral meningitis with sequela of seizures, fatigue, and memory loss is remanded.

As to the claim for a rating in excess of 10 percent for viral meningitis with sequela of seizures, fatigue, and memory loss, the Board finds that a remand is required to correct a pre-decisional error in the duty to assist,

Specifically, a review of the record on appeal reveals that in connection with this claim for an increased rating the Veteran was provided a VA examination in February 2019 at which time the examiner opined that his viral meningitis caused sleep apnea, memory loss, depression, and nightmares.

Moreover, a review of the record on appeal reveals competent and credible lay statements from the Veteran and his family regarding the claimant having observable problems with, among other things, fatigue, memory loss, and chronic pain. See, e.g., statements received in November 2017 and June 2019; also see Davidson, supra.

However, while 38 C.F.R. § 4.124a, DC 8019 provides that viral meningitis can be rated based on its residuals the Board finds that neither the February 2019 VA examination nor any of the other evidence of record is adequate to rate the Veteran’s residual sleep apnea, fatigue, and a psychiatric disorder (i.e., memory loss, depression, and nightmares). See Owens, supra. 

Therefore, the Board finds that the agency of original jurisdiction’s failure to provide the Veteran with an adequate examination that allows the Board to rate the severity of all of his viral meningitis residuals (i.e., sleep apnea, fatigue, and a psychiatric disorder (i.e., memory loss, depression, and nightmares) represents a pre-decisional error in the duty to assist that must be corrected by remand.

This issue is REMANDED for the following action:

In order to correct a pre-decisional error in the duty to assist, schedule the Veteran for VA examination(s) with a suitably-qualified medical professional to address the severity of all of his viral meningitis residuals to include sleep apnea, fatigue, and a psychiatric disorder (i.e., memory loss, depression, and nightmares). The claims file should be made available and reviewed by the examiner in conjunction with conducting the examination. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

After a review of the claims file, any needed testing, and an examination of the Veteran, the examiner should identify all symptomatology found to be present during the pendency of the appeal.

In providing the opinion the examiner should consider all of the Veteran’s and his families competent lay claims regarding observable symptomatology.

The examination report must include a complete rationale for all opinions expressed.

 

 

NEIL T. WERNER

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Waite

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.