Citation Nr: 1513782 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 13-07 862 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Sioux Falls, South Dakota


THE ISSUES


1. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical area.

2. Entitlement to service connection renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical area.

3. Entitlement to an initial rating in excess of 30 percent for coronary artery disease.

4. Entitlement to an initial compensable rating for bilateral hearing loss.

5. Entitlement to a total rating based on individual unemployability (TDIU).




ATTORNEY FOR THE BOARD

N. T. Werner, Counsel


INTRODUCTION

The Veteran served on active duty from April 1969 to April 1971.

This matter comes to the Board of Veterans' Appeal (Board) from May 2011 and August 2012 rating decisions by the Department of Veterans Affairs Regional Office (RO) in Sioux Falls, South Dakota.

Initially, the Board notes the RO treated the claims for service connection for renal cancer and lung cancer as separate claims. The Board is considering them as a single claim since the cancer in the lungs is actually renal cancer that has spread. 

Although the Veteran previously requested a hearing before a Veterans Law Judge, his ex-representative withdrew that request in a June 2013 statement. Therefore, the adjudication of the appeal may go forward without scheduling the Veteran for a personal hearing.

The claim for a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ. 


FINDINGS OF FACT

1. A September 2005 rating decision denied the Veteran's claim of service connection for renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and right cervical area.

2. The evidence received since the time of the final September 2005 rating decision is new, relates to an unestablished fact necessary to substantiate the claim, and raises a reasonable possibility of substantiating the Veteran's claim of service connection for renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and right cervical area.

3. The most probative evidence of record shows that the Veteran's current renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical was caused by his exposure to herbicides while on active duty in the Republic of Vietnam.

4. The most probative evidence of record shows that the Veteran's coronary artery disease is not manifested by acute congestive heart failure; a workload 5 METs or less; or left ventricular dysfunction with an ejection fraction of 30 to 50 percent at any time during the pendency of the appeal.

5. The audiometric test results obtained during examination by a VA audiologist correspond to a numeric designation of no greater than VII in the right ear and I in the left ear at all times during the pendency of the appeal.


CONCLUSIONS OF LAW

1. The September 2005 rating decision that denied service connection for renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical area is final. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2014).

2. Evidence submitted to reopen the claim of entitlement to service connection for renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical area is new and material and therefore the claim is reopened. 38 U.S.C.A. §§ 5108, 7105 (West 2014); 38 C.F.R. § 3.156 (2014).

3. The criteria for service connection for renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical area met. 38 U.S.C.A. §§ 1101, 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307(a)(6)(iii) (2014).

4. The criteria for an initial rating in excess of 30 percent for coronary artery disease have not been met at any time during the pendency of the appeal. 38 U.S.C.A. §§ 1155, 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.20, 4.27, 4.104, Diagnostic Code 7005 (2014).

5. The criteria for a compensable rating for bilateral hearing loss have not been met at any time during the pendency of the appeal. 38 U.S.C.A. §§ 1154(a), 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.159, 4.85, 4.86, Diagnostic Code 6100 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. The Renal Cell Carcinoma Claims

In this decision, the Board grants the claim to reopen and the subsequent claim of service connection for renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical area. As this represents a complete grant of the benefit sought on appeal, the Board finds that no discussion of VA's duty to notify and assist is necessary

The Claim to Reopen

The RO initially denied service connection for renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical area in a September 2005 rating decision. The Veteran did not appeal the September 2005 rating decision. Moreover, the record does not show that the Veteran, following the rating decision, submitted medical documentation, lay statements, or other evidence constituting new and material evidence within the one-year appeal period. 38 C.F.R. § 3.156(b). Therefore, the Board finds that the rating decision is final. 38 C.F.R. §§ 3.104, 20.302, 20.1103. 

As to reopening a prior final decision, the law provides that if new and material evidence has been presented or secured with respect to matters which have been disallowed, these matters may be reopened and the former disposition reviewed. 38 U.S.C.A. § 5108. New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

The Court has held that in determining whether the evidence is new and material, the credibility of the newly presented evidence is to be presumed. Kutscherousky v. West, 12 Vet. App. 369, 371 (1999) (per curiam).

In this regard, in order to establish service connection for the claimed disability, there must be probative evidence (1) of a current disability; (2) of in-service incurrence or aggravation of a disease or injury; and (3) of a nexus between the claimed in-service disease or injury and the current disability. See 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303; Hickson v. West, 12 Vet. App. 247, 253 (1999). 

The Board notes that the September 2005 rating decision denied the claim of service connection for renal cell carcinoma with metastatic disease because, among other things, the record did not show that it was due to the Veteran's military service. However, since the September 2005 rating decision VA received in August 2012 a letter from Darrell W. Plumage, M.D., in which he opined that the Veteran's renal cell carcinoma was due to his herbicide exposure in the Republic of Vietnam. The Board finds that Dr. Plumage's nexus opinion addresses a basis for the prior denial. Therefore, the Board finds the record contains new and material evidence as defined by regulation. Accordingly, the claim is reopened. 



The Service Connection Claim

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. This means that the facts establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Likewise, service connection may be granted for any disease diagnosed after discharge when all the evidence including that pertinent to service, establishes that the disease was incurred in service. 

This case turns on whether it may be concluded the Veteran developed renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical, diagnosed years after service, as a result of his presumptive exposure to herbicides because of his verified service in the Republic of Vietnam from October 1970 to April 1971. See 38 C.F.R. § 3.307(a)(6)(iii). In this regard, a VA examiner in December 2012 opined that there was no such relationship. However, the Board finds the earlier August 2012 opinion from Dr. Plumage that there was such a relationship more probative because, unlike the VA examiner's opinion, it was provided by applying this Veteran's specific medical history to a legitimate medical study. The VA examiner's opinion appears to have been based simply on the fact that this cancer has not been classified as a disease for which service connection is presumed. 

In view of Dr. Plumage's August 2012 opinion, the Board finds that a basis upon which to establish service connection has been presented and the claim is granted. 

II. The Rating Claims

a. The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

However, the Veteran is challenging the initial evaluations assigned following the grant of service connection. In Dingess v. Nicholson, 19 Vet. App. 473, 490 (2006), the Court held that in cases where service connection has been granted and initial disability evaluation has been assigned, the service connection claim has been more than substantiated, it has been proven, thereby rendering VCAA notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Moreover, the Board finds that even if VA had an obligation to provide additional notice under 38 U.S.C.A. § 5103(a) and failed to do so, this notice problem does not constitute prejudicial error in this case because the record reflects that a reasonable person could be expected to understand what was needed to substantiate the claims after reading the rating decisions and the statement of the case. See Shinseki v. Sanders, 129 S.Ct. 1696 (2009). 

As to the duty to assist, the Board finds that VA has secured all identified, available, and pertinent in-service and post-service evidence including the Veteran's records from Sioux Valley Hospital, the Mayo Clinic, Dakota Hospital, Sanford Clinic, as well as the Black Hills and Sioux Falls VA Medical Centers. See 38 U.S.C.A. § 5103A(b).

The Veteran was also provided VA examinations in connection with his claims as cited below, and the Board finds they are adequate for rating purpose. The Board has reached this conclusion because these examination reports reflect a review of the record on appeal and/or a detailed medical history taken from the claimant as well as a comprehensive examination of the claimant, which included opinions as to the severity of the disabilities that allow the Board to rate them under all relevant Diagnostic Codes. See 38 U.S.C.A. § 5103A(d); Barr v. Nicholson, 21 Vet. App. 303 (2007). As to the bilateral hearing loss, the Board also finds the examination adequate because the examiner opined, in substance, as to the effect of the Veteran's hearing loss disability had on occupational functioning and daily activities. See Martinak v. Nicholson, 21 Vet. App. 447, 455-56 (2007).

In summary, the facts relevant to this appeal have been properly developed and there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. §§ 5103(a), 5103A or 38 C.F.R. § 3.159. Therefore, the Veteran will not be prejudiced as a result of the Board proceeding to the merits of the appeal. See Bernard v. Brown, 4 Vet. App. 384, 392-94 (1993). 

In adjudicating the claims below, the Board has reviewed all of the evidence in the Veteran's claims file including those found in Virtual VA and VBMS. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that all the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims files shows, or fails to show, with respect to the claims. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

b. The Rating Claims

Disability evaluations are determined by the application of a schedule of ratings which is based, as far as can practically be determined, on the average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Each service-connected disability is rated on the basis of specific criteria identified by Diagnostic Codes. 38 C.F.R. § 4.27. When rating the Veteran's service-connected disability, the entire medical history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The Court has held that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). Separate compensable evaluations may be assigned for separate periods of time if such distinct periods of impairment are shown by the competent evidence of record during the appeal, a practice known as "staged" ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999).

In this regard, regulations require that where there is a question as to which of two evaluations is to be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When an unlisted condition is encountered, it is permissible to rate under a closely related disease or injury in which not only the functions affected, but also the anatomical localization and symptomatology are closely analogous. 38 C.F.R. § 4.20. 

In evaluating the evidence in any given appeal, it is the responsibility of the Board to weigh the evidence and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. In this regard, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000). In doing so, the Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. Evans v. West, 12 Vet. App. 22, 30 (1998). 

i. Coronary Artery Disease

The May 2011 rating decision granted service connection for coronary artery disease and assigned it a 10 percent rating effective from August 31, 2010. A December 2012 rating decision, increased the evaluation to 30 percent rating effective from August 31, 2010. The Veteran coronary artery disease was at all times rated under 38 C.F.R. § 4.104, Diagnostic Code 7005.

In this regard 38 C.F.R. § 4.104, Diagnostic Code 7005, provides a 10 percent rating for arteriosclerotic heart disease when it is manifested by a workload of greater than 7 METs but not greater than 10 METs results in dyspnea, fatigue, angina, dizziness, or continuous medication is required. A 30 percent rating for arteriosclerotic heart disease when it is manifested by a workload of greater than 5 METs but not greater than 7 METs results in dyspnea, fatigue, angina, dizziness, or syncope or evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray. A 60 percent rating for arteriosclerotic heart disease requires more than one episode of acute congestive heart failure in the past year; workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of 30 to 50 percent. And, a 100 percent for arteriosclerotic heart disease requires chronic congestive heart failure; workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of less than 30 percent. 

The Board notes that 38 C.F.R. § 4.104, Note 2, provides as follows: one MET is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for evaluation, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. 

With the above criteria in mind, at the July 2012 VA examination the Veteran reported that he is able to walk more than half a mile and navigate stairs, drive a tractor and car, and perform light work. However, the Veteran reported that he gets winded throwing bales of hay and performing heavy work as well as in hot weather. It was opined that the Veteran had a METs of more than 5 but less than 7, and that there was no evidence of cardiac hypertrophy or dilation based on a July 2012 echocardiogram. His left ventricular ejection fracture (LVEF) was 75 percent based on July 2012 testing. It was also opined that his coronary artery disease did not have a functional impact on the Veteran's ability to work. 

While treatment records document the Veteran's periodic complaints and treatment for coronary artery disease, nothing in these records show his adverse symptomatology to be materially worse than was seen at the above VA examination. In this regard, VA treatment records reported the Veteran's ejection fraction was 65 percent in April 2010 and 70 to 75 percent in July 2010. Moreover, while the Veteran reported in February 2011 that he was only able to obtain a 4 METs, the Board finds that this opinion has no probative value because as a lay person the Veteran does not have the required medical training to make this determination, whereas the VA examiner has such training. 

Given the evidence in this case, the Board finds that the most probative evidence shows the Veteran's coronary artery disease, at its worst, produced a METs of greater than 5, and because the record is negative for episodes of acute congestive heart failure or left ventricular dysfunction with an ejection fraction of 30 to 50 percent, the criteria for a higher evaluation under Diagnostic Code 7005 are not met. See 38 C.F.R. § 4.104; Also see Owens, supra. This is true at all times during the pendency of the appeal and therefore consideration of a staged rating is not warranted. See Fenderson, supra.

ii. Bilateral Hearing Loss

The August 2012 rating decision granted service connection for bilateral hearing loss and rated it as 0 percent disabling under 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100, effective from May 29, 2012. 

Evaluations of hearing impairment range from 0 to 100 percent based on organic impairment of hearing acuity. Auditory acuity is gauged by examining the results of controlled speech discrimination tests, together with the results of puretone audiometric tests in the frequencies of 1000, 2000, 3000, and 4000 cycles per second (Hz). To evaluate the degree of disability, the rating schedule establishes 11 auditory acuity levels ranging from level I, for essentially normal acuity, through level XI, for profound deafness. 38 C.F.R. § 4.85 et. seq. Tables VI and VII as set forth following 38 C.F.R. § 4.85 are used to calculate the rating to be assigned. 38 C.F.R. § 4.85. 

Under 38 C.F.R. § 4.86, when the puretone threshold at each of the four specified frequencies (1,000, 2,000, 3,000, and 4,000 Hertz) is 55 decibels or more, Table VI or Table VIa is to be used, whichever results in the higher numeral. 38 C.F.R. § 4.86(a). Additionally, when the puretone threshold is 30 decibels or less at 1,000 Hertz, and 70 decibels or more at 2,000 Hertz, Table VI or Table VIa is to be used, whichever results in the higher numeral. Thereafter, that numeral will be elevated to the next higher Roman numeral. 38 C.F.R. § 4.86(b).

During the pendency of the appeal, the Veteran was afforded an audiological examination by VA in July 2012. A review of the record on appeal does not reveal any other audiological examinations during the appeal period. 

At the July 2012 VA examination, audiometric testing showed puretone thresholds of 85, 75, 75, and 85 decibels in the right ear and puretone thresholds of 25, 20, 55, and 75 decibels in the left ear, at 1000, 2000, 3000, and 4000 Hertz, respectively. The averages were 80 decibels in the right ear and 44 decibels in the left ear. Speech recognition ability was 100 percent in the right ear and left ear.

With application of the above VA test results to 38 C.F.R. § 4.85, Table VI, and Table VII, the Board finds that the Veteran's right ear hearing loss is assigned a numeric designation II and the left ear hearing loss is assigned a numeric designation of I. These test scores result in the appellant's bilateral hearing loss being rated as non compensable under Diagnostic Code 6100. See 38 C.F.R. § 4.85. Therefore, a compensable rating is not warranted under Table VII. Id. This is true at all times during the pendency of the appeal and therefore staged ratings are not warranted. Fenderson, supra.

As to 38 C.F.R. § 4.86(a), the Board finds it applies to the current appeal because at the above examination the Veteran had thresholds of 55 decibels or more at each of the four specified frequencies (1,000, 2,000, 3,000, and 4,000 Hz) in the right ear. With application of 38 C.F.R. § 4.86(a) to 38 C.F.R. § 4.85, Table VIA, the Board finds that the Veteran's right ear hearing loss is assigned a numeric designation VII and the left ear hearing loss is assigned a numeric designation of I. These test scores result in the appellant's bilateral hearing loss being rated as non compensable under Diagnostic Code 6100. See 38 C.F.R. § 4.85. Therefore, a compensable rating is not warranted under Table VII. Id. This is true at all times during the pendency of the appeal and therefore staged ratings are not warranted. Fenderson, supra.

As to 38 C.F.R. § 4.86(b), the Board notes that at the above examination the Veteran did not have a puretone threshold of 30 decibels or less at 1,000 Hertz, and 70 decibels or more at 2,000 Hertz. Therefore, the Board finds that it is not for application. 

c. Conclusion

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2014). The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

However, the Board finds that the evidence does not show such an exceptional disability picture that the available schedular evaluations for the above service-connected disabilities are inadequate. A comparison between the level of severity and symptoms of the Veteran's service-connected disabilities with the established criteria shows that the rating criteria reasonably describe his disability levels and symptomatology. In short, there is nothing in the record to indicate that the service-connected disabilities causes impairment with employment over and above that is contemplated in the assigned schedular rating. The Board, therefore, has determined that referral of these issues for extraschedular consideration pursuant to 38 C.F.R. 3.321(b)(1) is not warranted at any time during the pendency of the appeal. 

In reaching this conclusion, the Board has not overlooked the decision by the United States Court of Appeals for the Federal Circuit in Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014) in which it held that the plain language of 38 C.F.R. 3.321(b)(1) provides for referral for extraschedular consideration based on the collective impact of multiple service-connected disabilities. However, the Board finds no basis to conclude that there is a collective impact between these disabilities and his other service connected disabilities, as to indicate an increased rating should be assigned and indeed, the Veteran has not asserted otherwise. As such, the Board finds that even taking into account Johnson this matter need not be remanded for referral to the Director, Compensation Service, for extraschedular consideration.

The Board also considered the doctrine of reasonable doubt. 38 U.S.C.A. § 5107(b). However, because the preponderance of the evidence is against the Veteran's rating claims, the doctrine is not for application. See also, e.g., Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

New and material evidence having been submitted, the claim for service connection for renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical area is reopened, and to that extent only, the appeal is granted. 

Service connection for renal cell carcinoma with metastatic disease of the left upper lung, parotid glands, right adrenal gland, and the right cervical area is granted.

An initial rating in excess of 30 percent for coronary artery disease is denied.

An initial compensable rating for bilateral hearing loss is denied.


REMAND

As to the claim for a TDIU, the Board finds that it is inextricably intertwined with the rating the AOJ will assign his newly service-connected renal cell carcinoma with metastatic disease. Therefore, the Board finds that adjudication of this issue must be held in abeyance until the AOJ undertakes this action. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (where a claim is inextricably intertwined with another claim, the claims must be adjudicated together in order to enter a final decision on the matter).

The record shows that the Veteran receives ongoing VA and private treatment. Therefore, while the appeal is in remand status any relevant outstanding contemporaneous treatment records should be obtained and associated with the claims file. See 38 U.S.C.A. § 5103A(b). Likewise, the Veteran should be examined to ascertain the functional impairment caused by his service connected disabilities. 

Accordingly, this issue is REMANDED to the AOJ for the following actions:

1. With any necessary assistance from the Veteran, attempt to obtain and physically or electronically associate with the claims file all of his post-August 2012 treatment records from the Black Hills VA Medical Center and post-July 2012 treatment records from the Sioux Falls VA Medical Center as well as his records from all non-VA providers. All actions to obtain the requested records should be documented fully in the claims file.

2. Provide the Veteran with an appropriate VA examination with respect to his TDIU claim. The claims file should be made available to the examiner. All appropriate tests should be performed. The examiner should describe the functional impact produced by the Veteran's service connected disabilities. 

3. After undertaking any further development as may become indicated by the results of the actions requested above, adjudicate the TDIU claim. If any benefit sought on appeal remains denied, issue a supplemental statement of the case, and provide an opportunity to respond before the case is returned to the Board. 

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs