http://www.va.gov/vetapp16/Files3/1621758.txt

Citation Nr: 1621758 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 11-24 658 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma

THE ISSUES

1. Entitlement to an increased rating for a right macular scar, status post right tear duct repair due to trauma (right eye disability), evaluated as 30 percent disabling from July 28, 2006, 20 percent disabling from January 1, 2010, and 30 percent disabling from June 23, 2015.

2. Entitlement to a total rating based on individual unemployability (TDIU) at any time from July 28, 2006, to October 17, 2011, and June 1, 2012, to October 15, 2013. 

REPRESENTATION

Appellant represented by: Oklahoma Department of Veterans Affairs

WITNESSES AT HEARINGS ON APPEAL

Appellant and a friend

ATTORNEY FOR THE BOARD

N. T. Werner, Counsel

INTRODUCTION

The Veteran served on active duty from August 1963 to September 1965.

This matter comes to the Board of Veterans' Appeal (Board) from a November 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma that granted the Veteran a 30 percent rating for his right eye disability effective from July 28, 2006, and a September 2010 rating decision that reduced the rating for the right eye disability to 20 percent disabling effective from January 1, 2010. 

In January 2014, the Veteran and a friend testified at a personal hearing at the RO before a Decision Review Officer (DRO). In December 2014, they testified at a video hearing before the undersigned. Transcripts of both hearings have been associated with the claims file.

In January 2015, the Board remanded the appeal for additional development. In a subsequent January 2016 rating decision, the RO granted the Veteran a 30 percent rating for his right eye disability effective from June 23, 2015.

As to the claim for a TDIU, the Board has recharacterized the issue as it appears above to reflect the fact that, while the RO had granted a TDIU effective from October 15, 2013, the rating claim has been pending since July 28, 2006, and the Veteran was assigned a temporary total disability rating for his service connected low back disability from October 18, 2011, to May 31, 2012. Also as to the TDIU claim, the Board notes that the January 2016 rating decision also discontinued it effective from June 23, 2015, because the Veteran became entitled to a 100 percent schedular rating effective from that date. The Veteran has not claimed that he is entitled to a TDIU for the post-June 23, 2015, time period because of a single service connected disability. Therefore, the Board finds that its adjudication of the claim for the TDIU is limited to the above appeal period.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. The Decision Review Officer (DRO) did not have the regulatory authority to reduce the rating for the Veteran's right eye disability to 20 percent disabling effective from January 1, 2010, in the September 2010 rating decision. 

2. At all times during the pendency of the appeal, the Veteran's unilateral right eye disability is in receipt of the maximum rating possible for impairment of the field of vision of a single eye and the preponderance of the evidence shows that the vision in the service-connected right eye is, at its worst, 20/80 and the vision in the non service-connected left eye is 20/40 or better.

3. At all times from December 10, 2008, the Veteran's unilateral right eye disability is in receipt of the maximum rating possible for impairment of the field of vision of a single eye and is in receipt of the maximum rating possible for visual impairment of a single eye without anatomical loss of that eye.

4. At all times from July 28, 2006, to October 17, 2011, and June 1, 2012, to October 15, 2013, the most probative evidence of record showed that the Veteran did not have one service-connected disability rated at least 60 percent disabling or two or more service-connected disabilities with one rated at least 40 percent disabling and a combined rating of at least 70 percent disabling; he was service-connected for posttraumatic stress disorder (PTSD) rated as 30 percent disabling, sinusitis rated as 30 percent disabling, a right eye disability rated as 30 percent disabling, a posterior trunk scar rated as non compensable, migraine headaches rated as non compensable from March 5, 2009, and a low back disability rated as 20 percent disabling from June 1, 2012; and his service-connected disabilities do not preclude him from securing and maintaining substantially gainful employment.

CONCLUSIONS OF LAW

1. The criteria for restoration of a 30 percent rating for the Veteran's right eye disability have been met from January 1, 2010, to June 22, 2015. 38 U.S.C.A. §§ 1155, 5107(West 2014); 38 C.F.R. §§ 3.102, 3.344, 3.2600 (2015).

2. The criteria for a rating in excess of 30 percent for the Veteran's right eye disability have not been met at any time during the pendency of the appeal. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.75, 4.78, 4.79, 4.80, 4.84a, Diagnostic Codes 6061 to 6080 (2008); 38 C.F.R. §§ 3.102, 3.159,3.326, 3.350, 3.383, 4.1, 4.2, 4.3, 4.7, 4.10, 4.16(b), 4.21, 4.75, 4.76, 4.76a, 4.77, 4.79, Diagnostic Codes 6061 to 6080 (2015).

3. The criteria for a TDIU have not been met at any time from July 28, 2006, to October 17, 2011, and June 1, 2012, to October 15, 2013. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.1, 4.16, 4.19 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In writing to VA as well as at his personal hearings, the Veteran asserted that the criteria for not only a restoration of the 30 percent rating for his right eye disability had been met, but the criteria for an even higher rating, because of the vision loss he has due to his service-connected right eye disability causes. Based on the same adverse symptomatology, it is also claimed that he met the criteria for a TDIU prior to October 15, 2013. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015) 

The Restoration Claim

The facts of this issue are not in dispute and are as following. The Veteran appealed the November 2006 rating decision that granted him a 30 percent rating for his right eye disability effective from July 28, 2006. In a September 2009 rating decision, issued by a DRO, the RO reduced the rating for the Veteran's right eye disability to 20 percent, effective January 1, 2010. This reduced, 20 percent rating, stayed in effect until June 22, 2015. 

The DRO did not have the regulatory authority to issue the rating reduction in September 2009. See 38 C.F.R. § 3.2600(d) (a DRO ". . . may not revise the decision in a manner that is less advantageous to the claimant than the decision under review . . ."). Moreover, the Board finds that the reduction was improper because, as will be discussed in more detail below, the severity of the Veteran's adverse symptomatology was substantially the same at all times during the pendency of the appeal and therefore the record did not show that there was an improvement in the disability under the ordinary conditions of daily life. See Murphy v. Shinseki, 26 Vet. App. 510, 517 (2014) ("Thus, it is well established in the Court's case law that VA cannot reduce a veteran's disability evaluation without first finding, inter alia, that the veteran's service-connected disability has improved to the point that he or she is now better able to function under the ordinary conditions of life and work."). Therefore, the Board finds that DRO's reduction was improper and the 30 percent rating for the Veteran's right eye disability is restored at all times from January 1, 2010, to June 22, 2015. 

The Rating Claim

Disability evaluations are determined by the application of a schedule of ratings which is based, as far as can practically be determined, on the average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Each service-connected disability is rated on the basis of specific criteria identified by Diagnostic Codes. 38 C.F.R. § 4.27. When rating the Veteran's service-connected disability, the entire medical history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). Separate compensable evaluations may be assigned for separate periods of time if such distinct periods are shown by the competent evidence of record during the appeal, a practice known as "staged" ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). Regulations require that where there is a question as to which of two evaluations is to be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In evaluating the evidence in any given appeal, it is the responsibility of the Board to weigh the evidence and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. Schoolman v. West, 12 Vet. App. 307, 310-11 (1999). In this regard, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006); Charles v. Principi, 16 Vet. App. 370 (2002); Klekar v. West, 12 Vet. App. 503, 507 (1999); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). In doing so, the Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. Evans v. West, 12 Vet. App. 22, 30 (1998); Owens v. Brown, 7 Vet. App. 429, 433 (1995). 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The November 2006 rating decision rating decision granted a 30 percent rating for the Veteran's right eye disorder under Diagnostic Code 6066-6080. 

Initially, the Board notes that VA's schedule for rating eye disabilities were revised effective December 10, 2008, but that these amended criteria govern cases only when the claim is filed on or after that date unless the Veteran asks that his claim be adjudicated under the new criteria. See 73 Fed. Reg. 66,543 (November 10, 2008). The post-remand record shows that the AOJ both adjudicated the Veteran's claim and provided him notice of the old and new rating criteria in the January 2016 supplemental statement of the case. Therefore, the Board will do likewise. In this regard, the Board will rate his service connected right eye disability under the old rating criteria for the entire time the claim has been pending and under the new rating criteria from December 10, 2008. See Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003).

Old 38 C.F.R. § 4.84a, Diagnostic Code 6080 (2008) rates loss of vision based on impairment of the field of vision.

In this regard, measurement of the visual field will be made when there is disease of the optic nerve or when otherwise indicated. 38 C.F.R. § 4.76 (2008). Under 38 C.F.R. § 4.76a, Table III, the normal visual field extent at the 8 principal meridians totals 500 degrees. The normal field for the 8 principal meridians are as follows: 85 degrees temporally; 85 degrees down temporally; 65 degrees down; 50 degrees down nasally; 60 degrees nasally; 55 degrees up nasally; 45 degrees up; and 55 degrees up temporally. Id. The extent of visual field contraction in each eye is determined by recording the extent of the remaining visual fields in each of the eight 45 degree principal meridians. Id. The number of degrees lost is determined at each meridian by subtracting the remaining degrees from the normal visual fields given in 38 C.F.R. § 4.76a, Table III. The degrees lost are then added together to determine the total number of degrees lost, which are subtracted from 500. The total remaining degrees of the visual field are then divided by eight to represent the average contraction for rating purposes. 38 C.F.R. § 4.76a (2008). 

Under Diagnostic Code 6080, a 30 percent rating is assigned for concentric contraction of the visual field to 45 degrees, but not to 30 degrees, bilaterally; concentric contraction of the visual field limited to 5 degrees, unilaterally; loss of the temporal half of the visual field bilaterally; or homonymous hemianopsia. 38 C.F.R. § 4.84a (2008). A 50 percent rating is assigned for concentric contraction of the visual field to 30 degrees, but not to 15 degrees, bilaterally. Id. A 100 percent disability rating is assigned for concentric contraction of the visual field to 5 degrees, bilaterally. Id.

Under the old rating criteria, the severity of the Veteran's right eye disability may also be rated based on visual acuity loss under 38 C.F.R. § 4.84a, Diagnostic Codes 6061 to 6079 (2008). 

In this respect, a 30 percent disability rating is warranted for impairment of central visual acuity in the following situations: (1) when vision in both eyes is correctable to 20/70; (2) when vision in one eye is correctable to 20/100 and vision in the other eye is correctable to 20/70; (3) when vision in one eye is correctable to 20/200 and vision in the other eye is correctable to 20/50; (4) when vision in one eye is correctable to 15/200 and vision in the other eye is correctable to 20/50; (5) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 20/40; or (6) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 20/40. 38 C.F.R. § 4.84a, Diagnostic Codes 6074, 6076, 6077, 6078 (2008).

A 40 percent disability rating is warranted for impairment of central visual acuity in the following situations: (1) when vision in one eye is correctable to 20/200 and vision in the other eye is correctable to 20/70; (2) when vision in one eye is correctable to 15/200 and vision in the other eye is correctable to 20/70; (3) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 20/50; or (4) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 20/50. 38 C.F.R. § 4.84a, Diagnostic Codes 6073, 6076 (2008).

Under the old rating criteria, when service connection is in effect for only one eye, the nonservice-connected eye is considered to have vision of 20/40 or better. Only when a veteran has blindness in one eye which is service-connected and blindness in the nonservice-connected eye will the eye be evaluated as if both disabilities were service connected. 38 U.S.C.A. § 1160 (West 2002); 38 C.F.R. § 3.383 (2008). Absent total blindness, visual acuity in the nonservice-connected eye is considered to be normal (20/40 or better) irrespective of any vision disability in that eye. Id; Villano v. Brown, 10 Vet. App. 248, 250 (1997). 

Lastly, under the old rating criteria when rating impairment of visual acuity and visual impairment when only one eye is service connected, the combined ratings for disabilities of the one service connected eye cannot exceed the amount for total loss of vision of that eye unless there is an enucleation or a serious cosmetic defect added to the total loss of vision. 38 C.F.R. § 4.80 (2008). 

New 38 C.F.R. § 4.79, Diagnostic Code 6080 (2015) also rates eye disorders based on impairment of the field of vision.

Under 38 C.F.R. § 4.76a, Table III (2015), the normal visual field extent at the 8 principal meridians totals 500 degrees. The normal for the 8 principal meridians are as follows: 85 degrees temporally; 85 degrees down temporally; 65 degrees down; 50 degrees down nasally; 60 degrees nasally; 55 degrees up nasally; 45 degrees up; and 55 degrees up temporally. Id. The extent of visual field contraction in each eye is determined by recording the extent of the remaining visual fields in each of the eight 45 degree principal meridians. Id. 

Under new Diagnostic Code 6080, a 30 percent rating is assigned for remaining field of 31 to 45 degrees unilaterally; concentric contraction of visual field unilaterally; loss of temporal half of visual field bilaterally; and homonymous hemianopsia visual filed defects. 38 C.F.R. § 4.79 (2015). A 50 percent rating is assigned for remaining field of 16 to 30 degrees bilaterally. Id. A 70 percent rating is assigned for remaining field of 6 to 15 degrees bilaterally. Id. A 100 percent rating is assigned for concentric contraction of visual field with remaining field of 5 degrees. Id.

Under the new rating criteria, visual impairment is also evaluated based on impairment of visual acuity (excluding developmental errors of refraction) and muscle function. 38 C.F.R. § 4.79 (2015). 

Under the new rating criteria, the severity of visual acuity loss is determined by applying the criteria set forth at 38 C.F.R. § 4.79. Under these criteria, impairment of central visual acuity is evaluated from noncompensable to 100 percent based upon the degree of the resulting impairment of visual acuity or field loss, pain, rest-requirements, or episodic incapacity, combining an additional rating of 10 percent during continuance of active pathology. 38 C.F.R. § 4.79, Diagnostic Codes 6061 to 6066 (2015). 

In this regard, a 30 percent evaluation is warranted only (1) when vision in both eyes is correctable to 20/70; (2) when vision in one eye is correctable to 20/100 and vision in the other eye is correctable to 20/70; (3) when vision in one eye is correctable to 20/200 and vision in the other eye is correctable to 20/50; (4) when vision in one eye is correctable to 15/200 and vision in the other eye is correctable to 20/50; (5) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 20/40; (6) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 20/40; and (7) when vision in one eye is no more than light perception and vision in the other eye is correctable to 20/40. 38 C.F.R. § 4.79, Diagnostic Codes 6064, 6065, 6066 (2015). A 40 percent disability rating is warranted only (1) when vision in one eye is correctable to 15/200 and vision in the other eye is correctable to 20/70; (2) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 20/50; (3) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 20/50; (4) when vision in one eye is no more than light perception and vision in the other eye is correctable to 20/50 or (5) when there is anatomical loss of one eye and vision in the other eye is correctable to 20/40. 38 C.F.R. § 4.79, Diagnostic Codes 6063, 6064, 6065, 6066 (2015).

To determine the evaluation for visual impairment when both decreased visual acuity and visual field defect are present in one or both eyes and are service-connected, separately evaluate the visual acuity and visual field defect (expressed as a level of visual acuity), and combine them under the provisions of §4.25. 38 C.F.R. § 4.77(c) (2015).

Lastly, under the new rating criteria the maximum evaluation for visual impairment of one eye must not exceed 30 percent unless there is anatomical loss of the eye. 38 C.F.R. § 4.75(d) (2015). The evaluation for visual impairment may be combined with evaluations for other disabilities of the same eye that are not based on visual impairment (e.g., disfigurement under Diagnostic Code 7800). Id. 

Field of Vision Impairment

a. The Old Rating Criteria

As to a rating in excess of 30 percent due to visual field impairment under old Diagnostic Code 6080, the Veteran is already in receipt of the maximum rating possible under this rating criteria for a unilateral eye disability. See 38 C.F.R. § 4.84a (2008). Therefore, the Board finds that an increased rating is not warranted for visual field impairment under 38 C.F.R. § 4.79 (2008). This is true at all times during the pendency of the appeal and therefore the Board need not consider staged ratings. See Hart, supra.

b. The New Rating Criteria

As to a rating in excess of 30 percent due to visual field impairment under new Diagnostic Code 6080 from December 10, 2008, the Veteran is also already in receipt of the maximum rating possible under this rating criteria for a unilateral eye disability. See 38 C.F.R. § 4.79 (2015). Therefore, the Board finds that an increased rating is not warranted for visual field impairment under 38 C.F.R. § 4.79. This is true from December 10, 2008, and therefore the Board need not consider staged ratings. See Hart, supra.

Visual Acuity Impairment

Initially, the Board notes that under the old and new rating criteria when rating impairment of visual acuity the best distant vision obtainable after best correction by glasses will normally be the basis of the rating. 38 C.F.R. § 4.75 (2008); 38 C.F.R. § 4.76(b) (2015).

However, the old rating criteria has an exception in cases of keratoconus in which contact lenses are medically required and when there exists a difference of more than 4 diopters of spherical correction between the two eyes. 38 C.F.R. § 4.75 (2008). In those circumstances, the best possible visual acuity of the poorer eye without glasses, or with a lens of not more than 4 diopters difference from that used with the better eye, will be taken as the visual acuity of the poorer eye. Id.

Similarly, the new criteria have an exception in cases of when there exists a difference of more than 3 diopters of spherical correction between the two eyes. 38 C.F.R. § 4.76(b) (2015). In these circumstances, VA evaluates the visual acuity of the poorer eye using either its uncorrected or corrected visual acuity whichever results in better combined visual acuity. Id.

In this case, however, there is no evidence indicating that the Veteran has been diagnosed with keratoconus or there being a difference of more than three diopters of spherical correction between the service-connected right eye and non service connected left eye. See, for example, VA examinations dated in March 2005, September 2006, June 2009, and June 2015. In fact, the June 2009 VA examiner specifically opined that there was not more than three diopters between the eyes and this medical opinion is not contradicted by any other medical evidence of record. Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991) (VA may only consider independent medical evidence to support its findings and is not permitted to base decisions on its own unsubstantiated medical conclusions).

Therefore, the Board finds that best distant vision obtainable after best correction by glasses will be the basis of the Veteran's visual acuity rating at all times during the pendency of the appeal. 38 C.F.R. § 4.75 (2008); 38 C.F.R. § 4.76 (2015); Hart. 

a. The Old Criteria

As to a rating in excess of 30 percent under old Diagnostic Codes 6061 to 6079 due to loss of visual acuity, at the March 2005 VA examination the best corrected distance vision in the service-connected right eye was 20/80 and the best corrected distance vision in the non service-connected left eye was 20/25; at the September 2006 VA examination the best corrected distance vision in the service-connected right eye was 20/60 and the best corrected distance vision in the non service-connected left eye was 20/20; at the June 2009 VA examination the best corrected distance vision in the service-connected right eye was 20/30 and the best corrected distance vision in the non service-connected left eye was 20/20; and at the June 2015 VA examination the best corrected distance vision in the service-connected right eye was 20/40 or better and the best corrected distance vision in the non service-connected left eye was 20/40 or better. Moreover, while treatment records periodically document the Veteran's complaints and treatment for problems seeing due to his service-connected right eye disorder, none of these records report his corrected distance vision to be worse than what was reported by the above VA examiners. See Colvin. 

Given the above testing, the Board finds that the nonservice-connected left eye must be considered to have vision of 20/40 or better at all times during the pendency of the appeal because the Veteran is not blind in both eyes. 38 C.F.R. § 3.383. Therefore, the Board finds that the criteria for a rating in excess of 30 percent for his right eye disability has not been met because, at its worst, the vision in the service-connected right eye is 20/80 and the vision in the non service-connected left eye is 20/40 or better and therefore vision in the service-connected right eye is not correctable to 20/200 when vision in the non service-connected left eye is correctable to 20/70, vision in the service-connected right eye is not correctable to 15/200 when vision in the non service-connected left eye is correctable to 20/70, vision in the service-connected right eye is not correctable to 10/200 when vision in the non service-connected left eye is correctable to 20/50, and vision in the service-connected right eye is not correctable to 5/200 when vision in the non service-connected left eye is correctable to 20/50. See 38 C.F.R. § 4.84a, Diagnostic Codes 6073, 6076 (2008). This is true at all times during the pendency of the appeal and therefore the Board finds that it need not consider staged ratings. See Hart, supra.

b. The New Criteria

As to a rating in excess of 30 percent under new Diagnostic Codes 6061 to 6079 due to loss of visual acuity, the 30 percent rating the Veteran has received at all times since December 10, 2008 is the maximum evaluation for visual impairment of without anatomical loss of the eye. See 38 C.F.R. § 4.75(d) (2015). Therefore, the Board finds that an increased rating is not warranted for visual impairment under 38 C.F.R. § 4.84a. This is true from December 10, 2008, and therefore the Board need not consider staged ratings. See Hart, supra.

The TDIU Claim

The Veteran asserts, in substance, that he was unemployable due to his service connected disabilities at all times from July 28, 2006, to October 17, 2011, and June 1, 2012, to October 15, 2013. 

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. If the total rating is based on a disability or combination of disabilities for which the Schedule for Rating Disabilities provides an evaluation of less than 100 percent, it must be determined that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age. 38 C.F.R. § 3.341. 

If the schedular rating is less than total, a total disability evaluation can be assigned based on individual unemployability if the Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability, provided that the Veteran has one service-connected disability rated at 60 percent or higher; or two or more service-connected disabilities, with one disability rated at 40 percent or higher and the combined rating is 70 percent or higher. The existence or degree of non-service connected disabilities will be disregarded if the above-stated percentage requirements are met and the evaluator determines that the Veteran's service-connected disabilities render him incapable of substantial gainful employment. 38 C.F.R. § 4.16(a). All Veterans who are shown to be unable to secure and follow a substantially gainful occupation by reason of service-connected disability shall be rated totally disabled. 38 C.F.R. § 4.16(b). In cases where the schedular criteria are not met, an extraschedular rating is for consideration. 38 C.F.R. § 3.321.

The central inquiry is, "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). The sole fact that the Veteran is unemployed or has difficulty obtaining employment is not enough. The assignment of a rating evaluation is itself recognition of industrial impairment. 

In this regard, from July 28, 2006, to October 17, 2011, and June 1, 2012, to October 15, 2013, the Veteran was service-connected for PTSD rated as 30 percent disabling, sinusitis rated as 30 percent disabling, a right eye disability rated as 30 percent disabling, a posterior trunk scar rated as non compensable, migraine headaches rated as non compensable from March 5, 2009, and a low back disability rated as 20 percent disabling from June 1, 2012. Therefore, the Board finds that the Veteran does not meet the minimum schedular threshold requirement (of a combined disability rating of 70 percent or more) to be considered for a TDIU rating. 38 C.F.R. § 4.16(a).

A TDIU may be awarded on an extra-schedular basis if a Veteran fails to meet the applicable percentage standards set forth in 38 C.F.R. § 4.16(a), but is still unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b). 

In Bowling v. Principi, 15 Vet. App. 1, 10 (2001), the Court, citing its decision in Floyd v. Brown, 9 Vet. App. 88, 94-97 (1995), held that the Board cannot award a TDIU under 38 C.F.R. § 4.16(b) in the first instance because that regulation requires that the RO first submit the claim to the Director of the Compensation and Pension Service for extraschedular consideration. 

Initially, the Board notes that in the Veteran's October 2013 claim for a TDIU and/or November 2013 notice of disagreement the Veteran told VA that he retired from his job as a salesman in 1995 at age 52 and has not worked since than because of the problems caused by his service connected low back disability and sinus disorder. He also reported that his PTSD also prevented him from being around people. He thereafter notified VA that he had three years of college and he has not had any other education or training. 

However, the Veteran told the March 2005 VA PTSD examiner that he stopped working five or six years ago because of his sinusitis, he told the April 2005 VA sinus examiner that he had worked as a mechanic until approximately 2001. Moreover, while the Veteran was not working during the appeal period in question, nothing in the record shows that he stopped working solely because of his service-connected disabilities apart from his contentions. 

In fact, the Board finds that the preponderance of the evidence of record shows that the Veteran's adverse symptomatology due to his service connected disabilities, acting alone or in concert, were not of such severity as to have prevented him from be able to secure and follow a substantially gainful occupation. See Owens v. Brown, 7 Vet. App. 429, 433 (1995) (holding that VA may favor the opinion of one competent medical expert over that of another when decision makers give an adequate statement of reasons and bases). In this regard, the March 2005 VA PTSD examiner reported that his sole adverse symptomatology due to his disability was a blunted mood and opined that his Global Assessment of Functioning (GAF) score was 51 to 60 indicating that his PTSD was only manifested by "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or schooling function (e.g., few friends, conflicts with peers or co-workers)." See AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Edition (1994) (DSM IV). Similarly, the April 2005 VA sinus examiner opined that his sinus examination was normal. This examiner also opined that the Veteran was alert, oriented, and not in any distress as well as ambulatory and able to walked without any walking aid. While the September 2006 VA eye examiner opined that the Veteran had a significant macular scar in the right eye and a lacrimal repair of the lower right lid, secondary to his previous traumatic incident, then non service-connected left eye was essentially normal. Likewise, the June 2009 VA eye examiner opined that his service-connected right eye disorder had no effect on his usual occupation because he is not employed and its only effect on his daily activity is tearing and blurred vision which results in eyestrain and headaches (i.e., adverse symptomatology that the Veteran already receives a 30 percent schedular rating for his right eye disorder). In addition, the January 2012 VA scar examiner opined that the Veteran's scar did not result in limitation of function or impact his ability to work. Furthermore, while treatment records during this time period documented the Veteran's complaints and treatment for his various service-connected disabilities, nothing in these treatment records show his adverse symptomatology to be worse than what was reported by the above VA examiners. See Colvin. Lastly, the Board notes that while the Veteran is considered competent and credible to report on what he can see and feel he is not competent or credible to state that his service connected disabilities prevented him from being able to secure and follow a substantially gainful occupation during this time period because such an opinion requires medical training that he does not have. See Davidson.

Therefore, given the lack of physical limitations reported by the above VA examiners as well as the Veteran's three years of college education as well as his prior work experience, the Board finds the most probative evidence of record shows that the Veteran's service-connected disabilities did not individually or collectively preclude him from securing and maintaining substantially gainful employment at any time from July 28, 2006, to October 17, 2011, and June 1, 2012. See Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013) (holding that the determination of whether a veteran is unable to secure or follow a substantially gainful occupation due to service-connected disabilities is a factual rather than a medical question and that it is an adjudicative determination properly made by the Board or the RO). Thus, referral for extraschedular consideration is not warranted. 

ORDER

A 30 percent rating for the Veteran's right eye disability is restored from January 1, 2010, to June 22, 2015.

A rating in excess of 30 percent for the Veteran's right eye disability is denied at all times during the pendency of the appeal.

A TDIU prior to October 15, 2013, is denied.

____________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs